IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MATTHEW SCOTT CARSON HOWARD, | ) | |
| Plaintiff, | ) | Civil Action No. 7:20-cv-00143 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| JOSHUA HAYES, *et al.*, | ) | United States District Judge |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Matthew Scott Carson Howard, a Virginia inmate proceeding *pro se*, commenced this civil action under 42 U.S.C. § 1983. His claims arise from an incident that occurred on February 3, 2020, while he was in the custody of the Southwest Virginia Regional Jail Authority. His amended complaint alleges that two of the three defendants—Todd Elam[1] and Marty Stanley—used excessive force on him in violation of his Eighth Amendment rights.[2] As for the third defendant, Joshua Hayes, Howard claims that Hayes violated his First, Eighth, and Fourteenth Amendment rights by refusing to discipline Stanley and Elam, prohibiting Howard from filing a criminal complaint against them, and discriminating against him based on his religion. Pending before the court is defendants' motion for summary judgment (Dkt. No. 57), to which Howard has responded (Dkt. No. 63). Defendants then filed a reply (Dkt. No. 64), which the court also has considered. For the reasons discussed in more detail herein, the court concludes that defendants' motion for summary judgment should be granted.[3]

---

[1] Defendant Elam has notified the court that his name is misspelled in the complaint. The Clerk will be directed to update the docket accordingly.

[2] The amended complaint consists of Dkt. No. 12 and a supplemental complaint permitted by the court, Dkt. No. 40. The supplemental allegations are not sworn or verified, although the amended complaint is. Thus, the court treats statements in the verified amended complaint (Dkt. No. 12), if based on personal knowledge, as evidence in opposition to the summary judgment motion. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

[3] In light of the court's ruling granting summary judgment in defendants' favor, defendants' pending motion to dismiss (Dkt. No. 45) will be denied as moot.

## I.  FACTUAL BACKGROUND

At the time of these events, Howard had been convicted of multiple offenses and was waiting to be transferred to a Virginia Department of Corrections facility.  On February 3, 2020, the inmates in Pod 6A, where Howard was housed, refused to lock down when instructed to do so by Stanley.

According to defendants' affidavits, Stanley was speaking to another inmate and instructing the inmate to lock down, when Howard approached and attempted to intervene. Stanley instructed Howard to go to his cell.  Howard then reached out and placed his hand on Stanley.  Stanley pushed Howard away and again instructed him to lock down.  Elam and other officers arrived and began escorting Howard to his cell while Stanley continued talking to the other inmate.  At that point, Howard began resisting and arguing as the officers escorted him to his cell.

Howard avers in his complaint that he "was cruelly beaten because of the aggression the officers had over something that happened in another pod and was taken out on me in a beating like no other when I never showed aggression in any way [and] tried to comply with the officers . . . [T]hey did not want to comply back."  (Am. Compl. 3, Dkt. No. 12.)  Additionally, in response to the summary judgment motion, he states that he "never fought or showed aggression to any officer," that he "tried to lock down but all they wanted was to bring pain and suffering to him." (Dkt. No. 63 at 1.)  He also claims that if "the court would order the rear video footage it would show the defendants' claims to be completely false." (*Id.*)  He also says the video that is part of the record shows that he "was beaten by multiple officers for a matter of a long period while crying out for them to stop." (*Id.*)  He also asks for the names of all staff members who worked that shift, stating that if he could obtain their names, they would testify in support of his version of events.  He further alleges that, immediately following the incident, his eyes were

swollen shut and that he was prescribed medication for a broken tooth.

An important portion of Howard's version of events is flatly contradicted by the video of the events at issue, however, which defendants have submitted as an exhibit.  Most importantly, the video reflects that Howard was not complying but instead was actively resisting the officers' attempts to place him in his cell. For example, the video shows Howard resisting by leaning his body against the officers as they tried to escort him to his cell.  (Video at 10:18:48, Dkt. No. 58-1.)  Also, as Howard approached the area between cells 6A19 and 6A20, he put his foot against the wall and lunged backwards against the officers.  (*Id.* at 10:18:51.)

Thereafter, defendants allege that Howard turned around and assumed an aggressive stance with his hands balled into fists.  The video generally supports this, although it does not reflect whether his fists were balled.  Defendants aver that Howard then began swinging his fists at Elam and the other officers, and Stanley joined the group as they tried to gain control of Howard.  Howard continued trying to hit the officers as they struggled to take Howard down to the floor and restrain him.

As a result of the struggle, one officer suffered a cut to his finger that began to bleed.  It took approximately five to six officers to gain control of Howard and restrain him.  As the officers point out in their affidavits, Howard's refusal to comply with orders and violence directed at officers presented a particularly dangerous situation to the officers present because other inmates were out of their cells at the time and also refusing to lock down.  That fact is reflected in the video, as well.  The officers rightly note that Howard's actions could have seriously injured one of the officers involved and/or incited the other inmates in the housing unit. In fact, one other inmate attempted to approach the officers as they struggled to restrain Howard, and Stanley had to intercept that inmate and walk him away from Howard's area.

Stanley and Elam both aver that they did not punch, kick, or knee Howard during the

incident.  The video does not expressly prove or disprove this, as there are portions of time while the officers are trying to restrain Howard in which it is not possible to tell exactly which officers are doing what. There are brief glimpses of Howard's arms in which he appears to be attempting to throw punches.

Once the officers were able to get restraints on Howard, he was left lying on the floor while the officers ensured other offenders were returned to their cells.  He was then escorted to the medical unit.  There, he complained of being hit in the face and left rib area.  (Dkt. No. 58-1, at 12.)  The nurse who assessed him reported that he was alert and oriented, his breathing was even and unlabored, and he had a steady gait.  She observed small, reddened areas to multiple areas of Howard's face, but no swelling, deformity, or bruising.  She observed some dried blood under his left nostril, but no active bleeding.  She observed no redness or bruising in the rib area. The nurse also evaluated Howard's complaints about tooth pain in his "left front tooth," but she noted no abnormalities and observed that the tooth he complained about was not loose.  (*Id.*) Howard was sent for x-rays of his face on the date of the incident, which revealed no evidence of fracture and were unremarkable.  The radiologist also noted that there was no visible swelling. (Dkt. No. 58-1 at 13.)  Thus, the medical records refute that Howard's eyes were swollen shut, as he alleges.

The following month, Howard complained again to a prison physician, stating that his nose was "crooked" and still hurt.  The physician noted in Howard's record, however, that the nose had no asymmetry or deformity and no septal deviation.  The doctor assessed Howard as having a "nose contusion" and prescribed 600 mg of Motrin twice daily.  (*Id.* at 10–11.) Howard's medical records do not reflect any other treatment that he attributes to the incident.[4]

---

[4]  On later dates, Howard complained about tooth pain in other areas of his mouth (his top right tooth on March 18, 2020, and his right lower tooth on May 4, 2020).

Howard also alleges that he tried to file a criminal complaint after the incident, but Hayes refused to allow him to see a magistrate.  (Am. Compl. 3, Dkt. No. 12.)  Lastly, he complains that Hayes did not discipline the offers after the incident and that Hayes "cited [Howard's] religion as justification for [the] officers' actions."  (Supp. Compl. 1, Dkt. No. 40.)

## II.   DISCUSSION

### A.  Summary Judgment Standard

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).[5]  In making that determination, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Id.* at 247–48.  Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor.  *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990).

### B.  Request for Video and Witnesses

In a prior motion to compel and again in his summary judgment response, Howard

---

[5] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted.  *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

suggests that he needs certain evidence to show to the court that defendants used excessive force. In particular, he requests the court review "rear video footage," which is video from another angle of the same incident.  (Dkt. No. 48 at 1; Dkt. No. 63 at 1.)  He also requests video of him in medical from that day, which he says will show additional injuries.  Lastly, he asks for the court to direct defendants to provide the names of all staff working on that day so that he may obtain statements from them.  (Dkt. No. 63 at 3.)

Nowhere does Howard reference Federal Rule of Civil Procedure 56(d), nor does he provide the affidavit required by that rule.  But to the extent Howard's statements could be considered as a request for relief under that provision and his filing a substitute for the required affidavit, the court would nonetheless deny his request.  The court recognizes that, where requested discovery could affect a summary judgment ruling, a court must be careful to allow for it, especially where the plaintiff is a *pro se* prisoner.  *Pledger v. Lynch*, __ F.4th __, 2021 WL 3072861, at *11 (4th Cir .July 21, 2021).  But there is no need to postpone a ruling on summary judgment to allow discovery regarding the videos Howard requests.  This is so because defendants have advised that the "rear camera" video footage he says should be produced does not exist, as the magistrate judge noted in denying Howard's motion to compel.  (Dkt. No. 72 at 2, 3.)[6]

As to any "medical" video, it does not appear that he ever requested that video from defendants, despite requesting other documents from defendants.  Moreover, the summary judgment record includes Howard's relevant medical records, and nowhere does he allege that

---

[6] Defendants have provided a photograph showing the area that the "rear camera" captures.  All the relevant events (as to whether Howard resisted and what occurred afterward), occurred under the upper tier's catwalk, which is not viewable from that angle. (Hayes 2d Decl., Dkt. No. 70-3.)  The sole exception is a brief period of time when officers escorted Howard from one side of the pod (under one upper tier) to the other side of the pod (under the other upper tier).  Hayes reviewed the "rear camera" footage, but the video from that camera did not show the exchange between the officers and Howard.  Thus, it was not preserved.  Howard presents no facts based on personal knowledge to dispute the information.

his medical providers' notes, including the assessment by the nurse on the day of the incident, are incorrect.

With regard to Howard's request for names of additional participants or potential witnesses, Howard does not indicate that he has made any attempt to obtain this information in discovery, and he does not identify any of the participants or potential witnesses by name, position, or physical description that he believes would back his version of events.  Moreover, because the events are clearly reflected on the video that is before the court, the court sees no reason to allow continued discovery on the off chance that he might be able to find a witness to corroborate his version of events.

For all of these reasons, any request under Rule 56(d) is denied.

## C.  Eighth Amendment Excessive Force Claim Against Stanley and Elam[7]

The Eighth Amendment prohibits prison officials from inflicting unnecessary and wanton pain and suffering on prisoners.  *Whitley v. Albers*, 475 U.S. 312, 320 (1986).  To succeed on an excessive force claim, a plaintiff must show that the prison official (1) used "nontrivial" force (objective component), *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010), and (2) acted with "wantonness in the infliction of pain" (subjective component), *Whitley*, 475 U.S. at 322.  In the prison context, analysis of the subjective component "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).  Whether the force was necessary or intentionally aimed at inflicting unnecessary physical harm depends on factors such as the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of the threat to the safety of staff

---

[7]  To the extent any claim against Stanley is based on a theory of "bystander liability," it fails.  If there was no use of excessive force, then there can be no bystander liability.  *Void v. Large*, No. 7:16cv64, 2018 WL 1474550, at *5 (W.D. Va. Mar. 26, 2018).

and inmates reasonably perceived by responsible officials, and any efforts made to temper the severity of a forceful response.  *Whitley*, 475 U.S. at 321; *see Wilkins*, 559 U.S. at 34.

As  noted, and even viewing the facts in the light most favorable to Howard, the court concludes that no reasonable jury could find in his favor.  As an initial matter, his assertion that he was compliant and not resisting is flatly contradicted by the video evidence.  As the Supreme Court has explained, in some cases, the available video evidence can so completely contradict the plaintiff's version that it overcomes his sworn assertions.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  That is, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.* at 380.  Applying that principle, the Fourth Circuit noted in *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), that where "the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape."

The video clearly shows Howard resisting and not complying as officers try to escort him to his cell.  The video also largely supports that the force used was reasonable and no more than necessary to restore order in light of the dangerous situation that Howard himself created.  Howard had refused to obey orders, resisted during the escort to his cell, confronted officers, and repeatedly tried to punch them.  It took at least five officers to gain control of him, and one officer suffered an injury during the fracas.  Thus, clearly there was a need for the application of force.  The officers appeared to respond with just enough force to gain control over him, so "the relationship between the need for force and the force used was reasonable."  Certainly, nothing about the incident suggests an obviously unnecessary disproportionate force, particularly because Howard's own actions in resisting and fighting required more force than would otherwise have

8

been necessary.[8]

The next factor, the extent of injury to Howard, also supports the conclusion that defendants applied force in a good faith effort to maintain order and discipline. *See Whitley*, 475 U.S. at 321. Howard's injuries were minimal. His medical examination immediately following the incident reflects that he had small, reddened areas on his face and some dried blood under one nostril, but he had no other bleeding, swelling, broken bones, or cuts. A month later, when he complained of tooth pain and his nose hurting, he was prescribed ibuprofen, but he has offered no medical testimony linking that pain to the incident. Moreover, his pain was treated only with ibuprofen, which does not suggest a significant injury.

Turning next to the *Whitley* factor of the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, *see id.*, the court finds it significant that this was a situation in which multiple inmates were out of their cells in a pod, refusing to lock down, and refusing to follow orders. Indeed, even as the group of officers tried to gain control of Howard, they were approached by another inmate who they had separate from Howard at the same time. There also were other offenders out of their cells, and other officers began arriving to try to get them in their cells. In short, the situation had great potential to lead to a more significant disturbance, and it was potentially dangerous to everyone present.

Lastly, in considering any efforts made to temper the severity of a forceful response, the court notes that neither the defendants nor any other officer pulled or used any weapon, including any type of spray, stun gun, or K-9. This, too, supports a finding that the amount of force used

---

[8] As noted, based on the angle of the camera and the fact that a number of officers surrounded Howard before he was fully restrained, it is impossible to tell whether any of the officers kicked or punched Howard in an attempt to get him to the ground. If they did, it is not visible on video. Even if they had done so, however, the court believes that no reasonable jury would find that force to be excessive, given the situation and the factors that must be considered under *Whitley*. Accordingly, the fact that the court cannot definitively state that Howard was not punched or kicked while officers were attempting to get him handcuffed does not preclude summary judgment in defendants' favor.

was constitutional.

In short, upon consideration of all the *Whitley* factors, and upon review of the entire record, including the video depicting the relevant events, no reasonable jury could find that Howard satisfied the subjective element of his excessive force claim.  Thus, defendants are entitled to summary judgment as to the Eighth Amendment claim against them.

**D.  Claims Against Hayes**

As noted, Howard also asserts claims against Hayes.  These claims are based on three basic actions by Hayes, but the court concludes that Hayes is entitled to summary judgment as to the claims against him.

**1.  Failure to Discipline**

Howard first claims that Hayes should be held liable for failing to discipline his employees.  A claim that a supervisor failed to discipline employees can give rise to a constitutional violation and valid claim under § 1983 only if the plaintiff's allegations satisfy the requirements of a supervisory liability claim.  Such a claim requires a plaintiff to show (1) that the defendant "had actual or constructive knowledge that [a] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff"; (2) that the defendant's "response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'"; and (3) that there was an "affirmative causal link" between the defendant's conduct and plaintiff's "particular constitutional injury."  *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)).

For several reasons, Howard has failed to allege, let alone set forth sufficient evidence to establish, a supervisory claim against Hayes.  The most fundamental of these is that, as already noted, there was no constitutional injury to Howard by Elam or Stanley.  Moreover, Hayes

reviewed videos of the incident and believed the force used was appropriate.  (Hayes Decl. ¶ 20., Dkt. No. 58-1.)  Thus, he did not believe there was any constitutional violation or need to discipline any officer.  Furthermore, a single incident cannot give rise to supervisory liability, absent evidence that the supervisor knew or should have known that a subordinate posed a pervasive and unreasonable risk to Howard or other inmates.  *Wilkins*, 751 F.3d at 226.  Howard has not come forward with any facts to establish that there were prior incidents of which Hayes should have known.  Howard's claim for supervisor liability thus fails.

### 2.  Failure to Permit Howard to Bring Criminal Charges

Howard also alleges that Hayes did not "permit" Howard to bring criminal charges.  First, Hayes has offered his own testimony that he directed his subordinate to take Howard's complaint to the magistrate, and the magistrate made the decision not to pursue the matter further.  (Hayes Decl. ¶¶ 21–24, Dkt. No. 58-1.)  Although Howard states in his verified complaint that Hayes prevented him from filing a complaint, he does not offer any facts in support of that assertion, nor does he offer any evidence to dispute that it was the magistrate who declined to authorize charges.

Even if, as Howard alleges, Hayes would not allow him to appear before a magistrate to swear out criminal charges against Elam, Stanley, or the officers, Hayes's actions do not violate any constitutional right of Howard's.  "No citizen has an enforceable right to institute a criminal prosecution."  *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) (citation omitted).  In fact, a citizen does not have any judicially cognizable interest in the prosecution or non-prosecution of another person.  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Diamond v. Charles*, 476 U.S. 54, 64–65 (1986) (applying *Linda R.S.* and collecting cases).  Thus, Howard has no claim under § 1983 arising from the failure of the magistrate—or Hayes—to allow him to initiate a criminal  prosecution against the other defendants.  *See id.*

Furthermore, to the extent Howard is asserting that this action by Hayes was a violation of his right to equal protection under the Fourteenth Amendment, he has failed to set forth or provide any evidence of an equal protection claim.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1. The Equal Protection Clause thus directs that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1982).  To prove an equal protection claim, a litigant "must first demonstrate that he has been treated differently from others with whom he is similarly situated."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)).  Howard has not set forth evidence from which a reasonable jury could conclude that he has made this threshold showing.  Thus, Hayes is entitled to summary judgment on any equal protection claim, too.

### 3.  Religious Discrimination

Howard also makes a vague claim alleging religious discrimination by Hayes.  It appears that this claim is based only on Hayes's failure to discipline the officers.  Howard does not offer any evidence, however, to show that any decision made by Hayes was based on Howard's religion or that Howard was treated differently because of his religion.  In any event, any failure-to-discipline claim by Howard fails for the reasons the court already has discussed.

### III.  CONCLUSION

For the foregoing reasons, the court concludes that summary judgment in favor of defendants is appropriate as to all claims.  An appropriate order will be entered.

Entered: September 24, 2021.

*/s/ Elizabeth K. Dillon*

Elizabeth K. Dillon
United States District Judge